IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| TIMOHTY EDWARD CLINTON, | ) | |
| --- | --- | --- |
| Plaintiff, | ) ) ) | |
| v. | ) ) | NO. 3:21-cv-00327 |
| MARK DOUGLAS PRESSLEY, M.D., et al., | ) ) ) | JUDGE RICHARDSON |
| Defendants. | ) ) | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is a pro se Complaint for alleged violation of civil rights (Doc. No. 1) filed pursuant to 42 U.S.C. § 1983 by Plaintiff Timothy Clinton, a former inmate of the Overton County Jail and the Tennessee Department of Correction (TDOC).[1] An application for leave to proceed in forma pauperis (IFP), in lieu of prepaying the filing fee, is included as an attachment to the Complaint (Doc. No. 1-1) and supported by inmate trust account documentation that was docketed with the Complaint. (*See* Doc. No. 1 at 9–14.)

The case is now before the Court for ruling on the IFP application and initial review of the Complaint pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(e)(2) and 1915A, and 42 U.S.C. § 1997e.

**APPLICATION TO PROCEED IFP**

Under the PLRA, 28 U.S.C. § 1915(a), a prisoner bringing a civil action may apply for permission to file suit without prepaying the filing fee required by 28 U.S.C. § 1914(a). Because

---

[1] Plaintiff notified the Court of his release from prison, in a letter dated April 30, 2021. (Doc. No. 3.)

it is apparent from Plaintiff's IFP application that he lacks the funds to pay the entire filing fee in advance, that application (Doc. No. 1-1) is **GRANTED**.

## INITIAL REVIEW OF THE COMPLAINT

I. PLRA SCREENING STANDARD

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court must dismiss any IFP complaint that is facially frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief against a defendant who is immune from such relief. Similarly, Section 1915A provides that the Court shall conduct an initial review of any prisoner complaint against a governmental entity, officer, or employee, and shall dismiss the complaint or any portion thereof if the defects listed in Section 1915(e)(2)(B) are identified. Under both statutes, this initial review of whether the complaint states a claim upon which relief may be granted asks whether it contains "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face," such that it would survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6). *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Applying this standard, the Court must view the complaint in the light most favorable to Plaintiff and, again, must take all well-pleaded factual allegations as true. *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). Furthermore, pro se pleadings must be liberally construed and "held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However,

pro se litigants are not exempt from the requirements of the Federal Rules of Civil Procedure, *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989), nor can the Court "create a claim which [a plaintiff] has not spelled out in his pleading." *Brown v. Matauszak*, 415 F. App'x 608, 613 (6th Cir. 2011) (quoting *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975)).

## II. SECTION 1983 STANDARD

Plaintiff seeks to vindicate alleged violations of his rights under 42 U.S.C. § 1983. Section 1983 creates a cause of action against any person who, acting under color of state law, deprives an individual of any right, privilege or immunity secured by the Constitution or federal laws. *Wurzelbacher v. Jones-Kelley*, 675 F.3d 580, 583 (6th Cir. 2012). Thus, to state a Section 1983 claim, Plaintiff must allege two elements: (1) a deprivation of rights secured by the Constitution or laws of the United States, and (2) that the deprivation was caused by a person acting under color of state law. *Carl v. Muskegon Cnty.*, 763 F.3d 592, 595 (6th Cir. 2014).

## III. ALLEGATIONS AND CLAIMS

Plaintiff alleges that he was diagnosed with a papillary carcinoma in March 2009, when a biopsy of a nodule in his thyroid gland revealed a malignant tumor. (Doc. No. 1 at 4.) At that time, Plaintiff was incarcerated at the Lois DeBerry Special Needs Facility, a TDOC facility in Nashville. A nurse at that facility had told Plaintiff "that the biopsy results were fine, to just keep an eye on it for any changes," when in fact the results revealed that Plaintiff had cancer. (*Id.*) Plaintiff did not learn of his cancer diagnosis until eleven years later, in June of 2020, when he was reviewing his medical records following treatment for a cardiopulmonary condition. (*Id.*) Follow-up diagnostic testing in August 2020 confirmed his thyroid cancer diagnosis. (Doc. No. 1-14.)[2]

---

[2] Attached to the Complaint and repeatedly referred to therein are Plaintiff's pertinent medical records, which the Court considers in performing the initial screening required by the PLRA. *See Hardy v. Sizer*,

3

Case 3:21-cv-00327   Document 5   Filed 08/12/21   Page 3 of 9 PageID #: 135

On May 16, 2020, Plaintiff went to the Riverview Regional Medical Center emergency room complaining of chest pain and shortness of breath. (Doc. No. 1 at 4.) A radiology report of examination using CT Angiography (CTA) with contrast included the finding that "[s]mall subsegmental pulmonary emboli are seen in the bilateral upper lobe pulmonary arterial branches" but that "[o]verall, clot burden is small." (Doc. No. 1-6 at 4.) Plaintiff was given medications and held for monitoring but declined to be admitted to the hospital, electing to leave the emergency room against medical advice later that day. (Doc. No. 1-5 at 12.)

Ten days later, on May 26, 2020, Plaintiff was arrested and booked into the Overton County Jail. Upon arrival at the Jail, he informed a nurse that he had a pulmonary embolus and had been prescribed the blood thinner Eliquis. (Doc. No. 1 at 4.) Two days after that, on May 28, 2020, Plaintiff was taken to the Livingston Regional Hospital emergency room with shortness of breath. (*Id.*; Doc. No. 1-8 at 5.) Dr. Mark Douglas Pressley ordered a CTA scan and other tests but found no pulmonary embolus, though he did find "lymph nodes and nodules." (*Id.*) Plaintiff was discharged in stable condition with diagnoses of chest wall pain and acute bronchitis. (Doc. No. 1-8 at 7.) His Eliquis and other medications were discontinued. (Doc. No. 1 at 4.)

On May 29, 2020, Jail Medical Director Karen Bennett-Baker expressed "concerns that [the] CTA report from Riverview ER confirmed pulmonary embolus" and that further care was therefore appropriate. (Doc. No. 1-9 at 2.) On June 4, 2020, Overton County Sheriff John Garrett

---

No. 16-1979, 2018 WL 3244002, at *2–3 (6th Cir. May 23, 2018) (affirming dismissal at screening of medical-care claim because "[r]eview of the documents attached to the complaint confirms that Hardy received medical treatment for his foot, ankle, and knee pain," rather than supporting "Hardy's allegations that the defendants ignored his complaints") (citing *Bassett v. Nat'l Collegiate Athletic Ass'n*, 528 F.3d 426, 430 (6th Cir. 2008) (explaining that a district court evaluating whether a complaint fails to state a claim may consider "any exhibits attached" to the complaint)); *see also Mitchell v. Bureau of Health Care Servs.*, No. 1:21-CV-67, 2021 WL 1049877, at *3 (W.D. Mich. Mar. 19, 2021) (dismissing complaint because "[n]othing in either Plaintiff's complaint or his attached medical records" supported his claimed medical need).

4

requested that Jail medical staff "wait on scheduling any test or medications until it was discussed with Dr. Pressley and himself." (Doc. No. 1 at 4). Plaintiff alleges that, "when further discussions took place in the days that followed, the Sheriff, Dr. Pressley and Karen Bennett-Baker made false statements of no [e]mboli[ ], requested by the Sheriff who is not a medical professional." (*Id.*) In the progress notes referenced in and attached to the Complaint, Bennett-Baker noted the following telephone exchange with Pressley on June 7, 2020:

> This writer explained to Dr. Pressley of position as medical director of Overton County Detention Center and desire to discuss Sheriff's concerns of treatment plan. Actual treatment plan not mentioned. Dr Pressley immediately states, "I did the gold standard test, which is the CTA. There was absolutely no pulmonary emboli! He does not need Eliquis! That's why I stopped it!" [Bennett-Baker] verbalized concern of discrepancy of among CTA reports from Livingston [and] Riverview Hospital radiology reports[.] Dr. Pressley stated, "I compared all 3 CTA's side-by-side. The Riverview report showed only a tiny clot in smallest, most distal branch – which is not clinically significant. I told [Sheriff] John [Garrett] all these repeat CT scans are not necessary and this [patient] is at much higher risk being on Eliquis in a jail environment than any miniscule benefit he could receive.

(Doc. No. 1-9 at 2–3.) Bennett-Baker further recorded that she had "canceled orders for Eliquis and CT scans as recommended by Dr. Pressley and sheriff," and that Sheriff Garrett "was happy." (*Id.* at 3.)

On August 28, 2020, a few days after leaving the Overton County Jail for state prison, Plaintiff was evaluated for sudden muscle pain and weakness at the Cumberland Medical Center, where he had another CTA scan that revealed a pulmonary embolus. (Doc. No. 1 at 4; Doc. No. 1-13 at 12–13.) He claims his life was endangered by the lack of treatment for his pulmonary emboli while he was an Overton County Jail inmate, and that he was deprived of timely notice of his thyroid cancer, which has more than likely "cost [him] a serious reduction in [his] life expectancy." (Doc. No. 1 at 5.)

5

Plaintiff seeks an award of damages for the deliberate indifference to his serious medical needs shown by Defendants Pressley, Baker, and Garrett. He also sues Dr. Mark Williams, the Nashville General Hospital physician who treated Plaintiff in 2009, and Southern Health Partners, the contract provider of medical staff and services to the Overton County Jail. (*Id.* at 3, 5–6.)

IV. ANALYSIS

Plaintiff claims that Defendants were deliberately indifferent to his serious medical needs in violation of his Eighth and Fourteenth Amendment rights. Deliberate-indifference claims have both an objective and subjective component. The objective component requires that Plaintiff's cardiopulmonary condition and thyroid cancer present a sufficiently serious medical need, *see Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018)—i.e., "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008) (citation and quotation marks omitted). If it does, the subjective component requires that Defendants understood yet consciously disregarded his need for medical treatment. *See Rhinehart*, 894 F.3d at 738. Deliberate indifference has thus been described as "something approaching a total unconcern for [the inmate's] welfare in the face of serious risks, or a conscious, culpable refusal to prevent harm." *Slone v. Lincoln Cnty., Ky.*, 242 F. Supp. 3d 579, 591 (E.D. Ky. 2017) (quoting *Duane v. Lane*, 959 F.2d 673, 677 (7th Cir. 1992)).

For purposes of initial review, the objective seriousness of Plaintiff's medical needs may readily be presumed. However, Defendants' subjective culpability is not plausibly alleged in the Complaint or supported in the attached medical records. While a delay in attending to an obvious medical need may constitute deliberate indifference where the delay is motivated by non-medical reasons, *Blackmore v. Kalamazoo Cnty.*, 390 F.3d 890, 899 (6th Cir. 2004), it is not deliberate

6

indifference if the delay is instead the result of "ordinary negligence or medical malpractice." *Atkins v. Parker*, 972 F.3d 734, 739 (6th Cir. 2020) (citing *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). Plaintiff does not allege that Dr. Pressley, Sheriff Garrett, Medical Director Bennett-Baker, or Bennett-Baker's employer, Southern Health Partners, decided to discontinue his testing or treatment with Eliquis or other blood-thinning medication based on anything other than a perceived lack of medical need for such treatment, after CTA tests appeared to reveal no clinically significant evidence of a pulmonary embolus or risk of clotting. While Plaintiff alleges that Sheriff Garrett influenced the two medical professionals to "ma[k]e false statements of no [e]mbol[i]" (Doc. No. 1 at 4), the most recent medical data at that time supported that finding. (*See* Doc. No. 1-8 at 11 (radiologist's finding that "[p]ulmonary artery evaluation [is] of good technical quality with no pulmonary artery embolism identified").) The failure to pursue additional testing to reconcile that finding with the prior evidence of small, bilateral pulmonary emboli (*see* Doc. No. 1-6 at 4) is not of constitutional concern, even with the benefit of hindsight based on test results after Plaintiff left the Jail. Rather, if the decision to rely upon the CTA scan results obtained by Dr. Pressley is assailable at all, it would be as a matter of medical negligence, not deliberate indifference. As mentioned above, Plaintiff cannot pursue a medical malpractice claim under Section 1983. *Atkins*, 972 F.3d at 739.

As to Plaintiff's claim related to the failure of Dr. Williams or prison medical staff in 2009 to advise him that pathology revealed a thyroid "lesion exhibit[ing] papillary features with intranuclear inclusions suggestive [of] papillary carcinoma" (Doc. No. 1-3 at 2), there does not appear to be any basis for holding Dr. Williams liable for a constitutional violation. Dr. Williams, a private physician, is not alleged to have acted in concert with any state actor and is therefore not a proper defendant to a Section 1983 action. *See Tahfs v. Proctor*, 316 F.3d 584, 590–92 (6th Cir.

7

2003) (requiring allegations that private party "acted corruptly in concert with a state official" in order to state viable claim under Section 1983, which only authorizes suit against "person acting under color of state law"). Furthermore, while Plaintiff alleges that "the head Registered Nurse in Medical Unit 15" of the Lois DeBerry Special Needs Facility in 2009 told him "that the biopsy results were fine, to just keep an eye on it for any changes" (Doc. No. 1 at 4), he does not allege any facts from which the Court could infer deliberate indifference as opposed to negligence in reporting those test results. Plaintiff has not stated a viable claim to relief under Section 1983 against any Defendant based on the alleged failure to inform him of possible thyroid cancer in 2009.

Finally, the Court notes that the medical records attached to the Complaint (Doc. Nos. 1-2, 1-3, 1-4, 1-8, 1-9, 1-10, 1-11, and 1-13) clearly demonstrate that Plaintiff received significant medical attention—including radiography, pathology, and one surgery—in multiple hospital settings to address lesions in his lung and thyroid, both as a state inmate in 2008–09 and as a county inmate in 2020. "Where a prisoner has received some medical attention and the dispute is over the adequacy of the treatment, federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). This Court will not second-guess Plaintiff's treatment but rather will dismiss his Complaint asserting a violation of federal rights, without prejudice to his ability to pursue appropriate relief under state law.

## CONCLUSION

For the reasons set forth above, the Court finds that the Complaint fails to state a claim upon which relief may be granted. This case is therefore **DISMISSED** pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), without prejudice to Plaintiff's ability to pursue his claims in state court.

8

Case 3:21-cv-00327   Document 5   Filed 08/12/21   Page 8 of 9 PageID #: 140

This is the final order in this action. The Clerk **SHALL** enter judgment. Fed. R. Civ. P. 58(b)(1).

IT IS SO ORDERED.

*Eli Richardson*
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE